IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| SHELLIE LUKE-REED, | ) | CASE NO. 1:11 CV 1346 |
| | ) | |
| Plaintiff, | ) | JUDGE JAMES S. GWIN |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | WILLIAM H. BAUGHMAN, JR. |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | |
| | ) | **REPORT & RECOMMENDATION** |
| Defendant. | ) | |

## Introduction

Before me by referral[1] is an action under 42 U.S.C. § 405(g) by Shellie Luke-Reed

seeking judicial review of the final decision of the Commissioner of Social Security denying

the applications of Luke-Reed for disability insurance benefits and supplemental security

income.[2] After the Commissioner filed an answer[3] and the transcript of the proceedings,[4] and

Luke-Reed filed a fact sheet[5] pursuant to my initial order,[6] the parties each briefed their

---

[1] This matter was referred to me under Local Rule 72.2 by United States District Judge
James Gwin in a non-document order dated July 1, 2011.

[2] ECF # 1.

[3] ECF # 11.

[4] ECF # 12.

[5] ECF # 14.

[6] ECF # 6.

respective positions,[7] and Luke-Reed submitted her supplemental charts[8] pursuant to my briefing order.[9] Although a telephonic oral argument had been scheduled in this case,[10] I have determined from a review of the filings and the record that such argument is not needed.

For the reasons that follow, I will recommend finding that the decision of the Commissioner is not supported by substantial evidence, and thus that the decision should be reversed and the matter remanded for additional proceedings.

## Facts

### A.      Findings and decision of the Administrative Law Judge

A review of the record establishes that Luke-Reed was 32 years old on the date in 2006 when she allegedly became disabled.[11] She is a high school graduate who completed an additional two years of college, and she is certified as an emergency medical technician.[12] Her past relevant work experience has been as a cashier, assistant manager, sales attendant, and nurse's aid.[13]

---

[7] ECF # 22 (Luke-Reed's brief); ECF # 26 (Commissioner's brief); ECF # 29 (Luke-Reed's reply brief).

[8] ECF # 21 (Luke-Reed's charts).

[9] ECF # 15.

[10] ECF # 30.

[11] Transcript ("Tr.") at 48.

[12] *Id*. at 48-49.

[13] *Id*. at 58, 156.

The Administrative Law Judge ("ALJ"), whose decision became the final decision of the Commissioner, found that Luke-Reed had severe impairments consisting of fibromyalgia, seizure disorder, and depressive disorder.[14] The ALJ then made the following finding regarding Luke-Reed's residual functional capacity ("RFC"):

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except the claimant can lift up to ten (10) pounds occasionally and small objects frequently; can sit at least six (6) hours in an eight (8)-hour workday; can stand or walk at least two (2) hours in an eight (8)-hour workday; cannot climb any ladders, ropes, or scaffolds, but can perform all other postural maneuvers on a frequent basis; should avoid concentrated exposure to cold or hot temperature extremes and vibration (no work on vibrating or moving surfaces or work with vibrating hand-held tools); should avoid work at unprotected heights or around hazards; should avoid driving for work purposes, including commercial driving; can only understand, remember, and carry out simple to detailed instructions or tasks, but no highly technical or complex instructions or tasks; and can only perform low-stress work meaning no high production or rapid production quotas.[15]

Based on that residual functional capacity, the ALJ found Luke-Reed incapable of performing her past relevant work.[16] Applying the medical-vocational grids in Appendix 2 of the regulations, the ALJ found that Luke-Reed would not be disabled.[17] The ALJ then asked a vocational expert ("VE") whether jobs existed in the national economy given

---

[14] *Id.* at 17.

[15] *Id.* at 19.

[16] *Id.* at 25.

[17] *Id.* at 27.

-3-

Luke-Reed's age, education, work experience, and RFC.[18] After the VE testified that a significant number of jobs existed in the local, state, and national economies that were unskilled and sedentary, the ALJ found that Luke-Reed was capable of making a successful adjustment to that other work and so was not disabled.[19]

**B.    Issues on judicial review**

Luke-Reed asks for reversal of the Commissioner's decision on the ground that it does not have the support of substantial evidence in the administrative record. Specifically, Luke-Reed advances three arguments:

1.    The ALJ erred at step three in failing to assess whether Luke-Reed's physical impairment met or equaled the listings of impairments.[20]

2.    The ALJ violated the treating physician rule.[21]

3.    The ALJ denied Luke-Reed her due process right to fully cross-examine the vocational expert at the administrative hearing.[22]

The Commissioner responded with a brief,[23] and Luke-Reed then filed a reply brief.[24] The matter is now ready for adjudication.

---

[18] *Id*. at 26.

[19] *Id.* at 27.

[20] ECF # 22 at 4-6.

[21] *Id*. at 6-9.

[22] *Id*. at 9-12.

[23] ECF # 26.

[24] ECF # 29.

-4-

# Analysis

## A.      Standards of review

### *1.      Substantial evidence*

The Sixth Circuit in *Buxton v. Halter* reemphasized the standard of review applicable

to decisions of the ALJs in disability cases:

> Congress has provided for federal court review of Social Security administrative decisions. 42 U.S.C. § 405(g). However, the scope of review is limited under 42 U.S.C. § 405(g): "The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive...." In other words, on review of the Commissioner's decision that claimant is not totally disabled within the meaning of the Social Security Act, the only issue reviewable by this court is whether the decision is supported by substantial evidence. Substantial evidence is " 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' "

> The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference.[25]

Viewed in the context of a jury trial, all that is necessary to affirm is that reasonable minds

could reach different conclusions on the evidence.  If such is the case, the Commissioner

survives "a directed verdict" and wins.[26]  The court may not disturb the Commissioner's

findings, even if the preponderance of the evidence favors the claimant.[27]

---

[25] *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) (citations omitted).

[26] *LeMaster v. Sec'y of Health & Human Servs.*, 802 F.2d 839, 840 (6th Cir. 1986); *Tucker v. Comm'r of Soc. Sec.*, No. 3:06cv403, 2008 WL 399573, at *6 (S.D. Ohio Feb. 12, 2008).

[27] *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).

I will review the findings of the ALJ at issue here consistent with that deferential standard.  The relevant evidence from the administrative record will be discussed in detail as part of the following analysis.

**2.      *Treating physician rule***

The regulations of the Social Security Administration require the Commissioner to give more weight to opinions of treating sources than to those of non-treating sources under appropriate circumstances.

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.[28]

If such opinions are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record," then they must receive "controlling" weight.[29]

The ALJ has the ultimate responsibility for determining whether a claimant is disabled.[30]  Conclusory statements by the treating source that the claimant is disabled are not entitled to deference under the regulation.[31]

---

[28] 20 C.F.R. § 404.1527(d)(2).

[29] *Id.*

[30] *Schuler v. Comm'r of Soc. Sec.*, 109 F. App'x 97, 101 (6th Cir. 2004).

[31] *Id.*

-6-

The regulation does cover treating source opinions as to a claimant's exertional limitations and work-related capacity in light of those limitations.[32]  Although the treating source's report need not contain all the supporting evidence to warrant the assignment of controlling weight to it,[33] nevertheless, it must be "well-supported by medically acceptable clinical and laboratory diagnostic techniques" to receive such weight.[34]  In deciding if such supporting evidence exists, the Court will review the administrative record as a whole and may rely on evidence not cited by the ALJ.[35]

In *Wilson v. Commissioner of Social Security*,[36] the Sixth Circuit discussed the treating source rule in the regulations with particular emphasis on the requirement that the agency "give good reasons" for not affording controlling weight to a treating physician's opinion in the context of a disability determination.[37]  The court noted that the regulation expressly contains a "good reasons" requirement.[38]  The court stated that to meet this obligation to give good reasons for discounting a treating source's opinion, the ALJ must do the following:

---

[32] *Swain v. Comm'r of Soc. Sec.*, 297 F. Supp. 2d 986, 991 (N.D. Ohio 2003), citing *Green-Younger v. Barnhart*, 335 F.3d 99, 106-07 (2nd Cir. 2003).

[33] *Garner v. Heckler*, 745 F.2d 383, 391 (6th Cir. 1984).

[34] *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir. 2001).

[35] *Id.* at 535.

[36] *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541 (6th Cir. 2004).

[37] *Id.* at 544.

[38] *Id.*, citing and quoting 20 C.F.R. § 404.1527(d)(2).

- State that the opinion is not supported by medically acceptable clinical and laboratory techniques or is inconsistent with other evidence in the case record.

- Identify evidence supporting such finding.

- Explain the application of the factors listed in 20 C.F.R. § 404.1527(d)(2) to determine the weight that should be given to the treating source's opinion.[39]

The court went on to hold that the failure to articulate good reasons for discounting the treating source's opinion is not harmless error.[40] It drew a distinction between a regulation that bestows procedural benefits upon a party and one promulgated for the orderly transaction of the agency's business.[41] The former confers a substantial, procedural right on the party invoking it that cannot be set aside for harmless error.[42] It concluded that the requirement in § 1527(d)(2) for articulation of good reasons for not giving controlling weight to a treating physician's opinion created a substantial right exempt from the harmless error rule.[43]

The opinion in *Wilson* sets up a three-part requirement for articulation against which an ALJ's opinion failing to assign controlling weight to a treating physician's opinion must be measured. First, the ALJ must find that the treating source's opinion is not being given

---

[39] *Id.* at 546.

[40] *Id.*

[41] *Id.*

[42] *Id.*

[43] *Id.*

controlling weight and state the reason(s) therefor in terms of the regulation – the absence

of support by medically acceptable clinical and laboratory techniques and/or inconsistency

with other evidence in the case record.[44]  Second, the ALJ must identify for the record

evidence supporting that finding." [45]  Third, the ALJ must determine what weight, if any, to

give the treating source's opinion in light of the factors listed in 20 C.F.R.

§ 404.1527(d)(2).[46]

In a nutshell, the *Wilson* line of cases interpreting the Commissioner's regulations

recognizes a rebuttable presumption that a treating source's opinion should receive

controlling weight.[47]  The ALJ must assign specific weight to the opinion of each treating

source and, if the weight assigned is not controlling, then give good reasons for not giving

those opinions controlling weight.[48]  In articulating good reasons for assigning weight other

than controlling, the ALJ must do more than state that the opinion of the treating physician

disagrees with the opinion of a non-treating physician[49] or that objective medical evidence

does not support that opinion.[50]

---

[44] *Wilson*, 378 F.3d at 546.

[45] *Id.*

[46] *Id.*

[47] *Rogers*, 486 F.3d at 242.

[48] *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406-07 (6th Cir. 2009).

[49] *Hensley v. Astrue*, 573 F.3d 263, 266-67 (6th Cir. 2009).

[50] *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 551-52 (6th Cir. 2010).

The failure of an ALJ to follow the procedural rules for assigning weight to the opinions of treating sources and the giving of good reason for the weight assigned denotes a lack of substantial evidence even if the decision of the ALJ may be justified based on the record.[51]  The Commissioner's *post hoc* arguments on judicial review are immaterial.[52]

Given the significant implications of a failure to properly articulate (*i.e.*, remand) mandated by the *Wilson* decision, an ALJ should structure the decision to remove any doubt as to the weight given the treating source's opinion and the reasons for assigning such weight.  In a single paragraph the ALJ should state what weight he or she assigns to the treating source's opinion and then discuss the evidence of record supporting that assignment. Where the treating source's opinion does not receive controlling weight, the decision must justify the assignment given in light of the factors set out in §§ 1527(d)(1)-(6).

The Sixth Circuit has identified certain breaches of the *Wilson* rules as grounds for reversal and remand:

- the failure to mention and consider the opinion of a treating source,[53]

- the rejection or discounting of the weight of a treating source without assigning weight,[54]

---

[51] *Blakley*, 581 F.3d at 407.

[52] *Wooten v. Astrue*, No. 1:09-cv-981, 2010 WL 184147 (N.D. Ohio Jan. 14, 2010).

[53] *Blakley*, 581 F.3d at 407-08.

[54] *Id.* at 408.

-10-

- the failure to explain how the opinion of a source properly considered as a treating source is weighed (*i.e.*, treating v. examining),[55]

- the elevation of the opinion of a nonexamining source over that of a treating source if the nonexamining source has not reviewed the opinion of the treating source,[56]

- the rejection of the opinion of a treating source because it conflicts with the opinion of another medical source without an explanation of the reason therefor,[57] and

- the rejection of the opinion of a treating source for inconsistency with other evidence in the record without an explanation of why "the treating physician's conclusion gets the short end of the stick."[58]

The Sixth Circuit in *Blakley v. Commissioner of Social Security*[59] expressed skepticism as to the Commissioner's argument that the error should be viewed as harmless since substantial evidence exists to support the ultimate finding.[60]  Specifically, *Blakley* concluded that "even if we were to agree that substantial evidence supports the ALJ's weighing of each of these doctors' opinions, substantial evidence alone does not excuse non-compliance with 20 C.F.R. § 404.1527(d)(2) as harmless error."[61]

---

[55] *Id.*

[56] *Id.* at 409.

[57] *Hensley*, 573 F.3d at 266-67.

[58] *Friend*, 375 F. App'x at 551-52.

[59] *Blakley*, 581 F.3d 399.

[60] *Id.* at 409-10.

[61] *Id.* at 410.

In *Cole v. Astrue*,[62] the Sixth Circuit recently reemphasized that harmless error sufficient to excuse the breach of the treating source rule only exists if the opinion it issues is so patently deficient as to make it incredible, if the Commissioner implicitly adopts the source's opinion or makes findings consistent with it, or if the goal of the treating source regulation is satisfied despite non-compliance.[63]

**B.    Application of standards**

***1.    The ALJ erred by not evaluating whether Luke-Reed's physical impairments met or equaled a listing.***

Luke-Reed contends here that while the ALJ clearly discussed whether her mental impairment met or equaled Listing § 12.04 (affective disorder), the ALJ did not deal at all with whether her physical impairments of fibromyalgia and seizure disorder met or equaled a listing.[64] Moreover, she notes that the ALJ further failed to consider whether some combination of the mental and physical disorders met or equaled a listing.[65]

In response, the Commissioner argues that because the ALJ ultimately concluded that no impairment or combination of impairments met or equaled a listing, and because that discussion can be supported by a review of the "ALJ's lengthy discussion of the diagnostic

---

[62] *Cole v. Astrue*, 661 F.3d 931 (6th Cir. 2011).

[63] *Id.* at 940.

[64] ECF # 22 at 4.

[65] *Id.*

-12-

testing and clinical findings throughout her decision,"[66]this Court should conclude that Luke-Reed does not meet or equal any listed impairment.[67]

It is important to note initially that Luke-Reed affirmatively asserted at the hearing, through counsel, that she was disabled by seizure disorders and fibromyalgia,[68] and further claimed here that such disability met or equaled the relevant listings.[69] As such, this case appears to be distinguishable from *Todd v. Astrue*,[70] wherein a claimant, also represented by counsel, "never argue[d] that he meets [the applicable listings], but only contends that this case should be remanded so the ALJ can articulate a more thorough analysis at Step Three."[71] After noting the rule that remand would not be required unless there was reason to believe that it might yield a different result, *Todd* then determined that an argument solely based on lack of proper articulation at Step Three, without any effort by the claimant to show that he

---

[66] ECF # 26 at 12.

[67] *Id*. at 11-16.

[68] *See*, Tr. at 60-61.

[69] *See*, ECF # 22 at 5-6; *see also*, ECF # 26 at 12 (Commissioner's brief) ("The record does not support Plaintiff's argument that she met or equaled the epilepsy Listing.")  As the Sixth Circuit observes in *Anthony v. Astrue*, 266 F. App'x 451, 458 (6th Cir. 2008), seizure disorders can qualify under either Listing § 11.02 or § 11.03 depending on whether the manifestation is primarily convulsive or not. In addition, while there is no specific listing for fibromyalgia, as the Sixth Circuit notes in *Bartyzel v. Comm'r of Soc. Sec.*, 74 F. App'x 515, 525 (6th Cir. 2003), fibromyalgia can be considered under Listing § 14.06, which covers undifferentiated connective tissue disease.

[70] *Todd v. Astrue*, No. 1:11 CV 1099, 2012 WL 2576435 (N.D. Ohio May 15, 2012).

[71] *Id.*, at *10.

-13-

does meet or equal a listing, does not  provide "an adequate basis to conclude that remand for the ALJ to more fully explain his Step Three analysis might lead to a different result,"and so a remand would not be required.[72]

As to the circumstances obtaining here, I recently extensively addressed the issue as to the ALJ's responsibility to set forth reviewable reasons at step three in *Grohoske v. Commissioner*.[73] In that opinion,[74] I reviewed the large body of applicable case authority applicable to this matter and concluded that a matter will be remanded when an ALJ employs a "perfunctory recitation of the analytical formula, without any development," to conclude that impairments do not meet a listing.[75] Further, I noted that while it is possible that an extensive discussion at step four of clinical findings relevant to an impairment for which no detail was given at step three might result in a finding of harmless error,[76] an attempt by the Commissioner to supply that discussion in the brief will be unavailing.[77]

In this case, there was clearly no articulation of any findings concerning the physical impairments at step three, and the discussion of seizure disorders and fibromyalgia at step

_____

[72] *Id.*

[73] *Grohoske v. Comm'r of Soc. Sec.*, No. 3:11 CV 410, 2012 WL 2931400 (N.D. Ohio July 18, 2012).

[74] The case was before me by consent.

[75] *Id.* at *3 (citations omitted).

[76] *Id.*, at n.53.

[77] *Id.* (citation omitted).

-14-

four is not conclusive as to whether these conditions meet or equal the listings.[78] Therefore, as was noted in *Hakkarainen v. Astrue*,[79] "the Court is unable to conduct a meaningful review of the ALJ's step three analysis of the claimant's [impairment] because the ALJ skipped the entire step."[80]

**2.     *The ALJ did not violate the treating physician rule in the way he gave less weight to the November 2008 opinion of Dr. Gary Kutsikovich, M.D.***

At issue here is the decision by the ALJ to give one of three opinions from Luke-Reed's treating neurologist only limited weight. Luke-Reed argues that this was impermissible because the ALJ based that decision on a presumption that indications of improvement in Dr. Kutsikovich's treatment notes made the physician's conclusion unsupportable.[81] Luke-Reed maintains that in so doing the ALJ improperly substituted his judgment as to the importance and effect of the recorded improvements for that of the physician.[82]

---

[78] The Commissioner in his brief does set forth the points raised in the step four discussion and then simply concludes that the symptoms do not meet the listings. ECF # 12-15.

[79] *Hakkarainen v. Astrue*, No. 1:10 CV 2463, 2012 WL 398595 (N.D. Ohio Jan. 19, 2012).

[80] *Id*., at *13 (citations omitted).

[81] ECF # 22 at 8-9.

[82] *Id*. at 9.

I note first that the issue here is not one of articulation – the ALJ identified three distinct ways in which the November 2008 opinion is purportedly inconsistent with the record[83] – but rather asserts that the reasons given are not "good" reasons.

The opinion at issue involved Dr. Kutsikovich's conclusions on an RFC questionnaire where he stated that (a) Luke-Reed's seizures would likely disrupt the work of co-workers, (b) would mean that she needed unscheduled breaks, sometimes needing several days rest following a seizure, (c) that she would miss work more than three days a month following a seizure, and (d) that she would need a low-stress environment.[84] The ALJ reviewed those opinions against the evidence of record, finding: (a) the record does not show that post-seizure symptoms are so severe as to preclude a return to work for several days, and (b) the evidence shows that Luke-Reed is capable of low-stress work.[85]

Further, the ALJ noted that Dr. Kutsikovich, in his November report, stated that Luke-Reed's last three seizures occurred in April, May, and June of 2008, but the ALJ observed that there are no medical records corroborating seizures on those dates.[86]

As set forth above, where the opinion of a treating physician is not supported by objective evidence or is inconsistent with the other medical evidence of record, the reviewing

---

[83] *See*, Tr. at 23-24.

[84] *Id*. at 23.

[85] *Id*. at 23-24.

[86] *Id*. at 24

court "generally will uphold an ALJ's decision to discount that opinion."[87] Evidence will be judged to be substantial although the evidence could potentially bear a different interpretation or the reviewing court might arrive at a different conclusion.[88] Moreover, it is well-settled that mere conclusions by a treating source as to functional limitations, without support in the record, may be discounted.[89]

Accordingly, I recommend finding that the decision of the ALJ in this instance to discount the November 2008 opinion of Dr. Kutsikovich was supported by substantial evidence.

**3.**     ***The ALJ did deny Luke-Reed her right under the regulations to question the VE, and it is unclear if that denial constitutes a violation of due process, and if the matter is otherwise recommended for remand, this issue should be remanded as well.***

20 C.F.R. §§ 404.950(e) and 416.1450(e) provide in relevant part that the ALJ "shall allow" the claimant or the designated representative to ask any material question. Here, Luke-Reed's attorney attempted to ask the VE about what effects being off-task for certain amounts would have on an individual's capacity to do the jobs cited, and further sought to inquire as to the effects of absences.[90] The questions were disallowed.[91]

---

[87] *Price v. Comm'r of Soc. Sec.*, 342 F. App'x 172, 176 (6th Cir. 2009) (citations omitted).

[88] *See*, *Rogers*, 486 F.3d at 241.

[89] *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 652 (6th Cir. 2006) (citation omitted).

[90] *See*, ECF # 22 at 10 (citing record).

[91] *Id.*

-17-

First, it appears that the ALJ here did violate the applicable regulations concerning the right of the claimant to ask any material question.[92] Next, as Luke-Reed indicates, because it is impossible to know whether the VE would have found that jobs remained if he had been permitted to answer the questions, it is difficult to state conclusively that she was prejudiced by the ALJ's action.[93] However, because the regulations were violated and since the matter is recommended for remand on other grounds, I recommend that this issue be included in the remand.

## Conclusion

Substantial evidence does not support the finding of the Commissioner that Luke-Reed had no disability. Accordingly, I recommend that the decision of the Commissioner denying Luke-Reed's applications for disability insurance benefits and supplemental security income be reversed and the matter remanded for further proceedings.

Dated: August 10, 2012                    s/ William H. Baughman, Jr.
                                          United States Magistrate Judge

---

[92] *See*, *San Miguel v. Astrue*, No. 1:10 CV 00969, 2012 WL 1080581, at *5 (M.D. Ala. March 30, 2012).

[93] *See*, *Gordon v. Astrue*, 249 F. App'x 810, 813 (11th Cir. 2007) (whether an ALJ's failure to permit a claimant to proceed with a question constituted due process depends on whether the claimant demonstrates prejudice); *see also*, ECF # 26 at 19-20 (Commissioner here argues that any error was procedural and non-prejudicial to Luke-Reed).

-18-

## Objections

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within ten (10) days of receipt of this notice. Failure to file objections within the specified time waives the right to appeal the District Court's order.[94]

---

[94] *See*, *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also*, *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).